DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment by the Erie County Court of Common Pleas, Juvenile Division, terminating a mother's and father's parental rights and granting *Page 2 
permanent custody to appellee, Erie County Department of Job and Family Services ("agency"). For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} Husband-and-wife appellants, Leroy S., Jr. and Tina S., are the biological parents of minor children, Carol S., who was born in 1997, Carmon S., who was born in 1999, Sherry S., who was born in 2000, and Leroy S., III, who was born in 2003. The agency first became involved with this family in the fall of 2005, in response to allegations that the father, Leroy S., Jr. had sexually abused his three girls. At that time, the family, having recently moved from Illinois, had been living in Ohio for approximately one month.
 {¶ 3} On October 7, 2005, temporary custody of the minor children was granted to the agency. On January 3, 2006, the agency filed complaints alleging that Carol S., Carmon S., and Sherry S. were abused, neglected and dependent children and that Leroy S., III was a dependent child. By entry of admissions, both parents waived their right to trial in connection with these complaints. On March 10, 2006, the children were adjudicated as follows: Carol S. was found to be abused, neglected, and dependent; Carmon S. and Sherry S. were found to be neglected and dependent; and Leroy S., III was found to be dependent.
 {¶ 4} Pursuant to these adjudications, the trial court ordered that temporary custody continue with the agency. The court further ordered that both parents were to submit to psychological evaluations, and that Leroy S., Jr. was, in addition, to follow all recommendations of Firelands Mental Health in connection with his domestic violence *Page 3 
assessment and to submit to a sex specific evaluation with Mary Kate Baumgardner of The Giving Tree. A previously-issued restraining order preventing Leroy S., Jr. from having any contact whatsoever with his children was ordered to remain in effect, and supervised visitation for Tina S. was ordered to continue. Mental health counseling for each of the children and the children's placement with foster mother, Christine A., were likewise ordered to continue.
 {¶ 5} On September 17, 2007, the agency timely filed a motion for permanent custody of the minor children. Hearing on the matter was held on February 19, 20, and 21, 2008. At the hearing, certain facts were stipulated to by the parties.
 {¶ 6} Any defects in notice of service of the motion for permanent custody and summons and/or of hearing were waived, and all parties acknowledged that the court was rendering its decision in the matter within the period mandated by statute. The parties agreed that the guardian ad litem's report for the children had been circulated to all parties and filed prior to the commencement of trial. In addition, the parties acknowledged the prior adjudications of the children as indicated above; the fact that the children had been in the temporary custody of the agency for 12 or more months of a consecutive 22 month period after March 18, 1999; and the fact that the children cannot now, or within a reasonable time in the future, be placed with their parents.
 {¶ 7} Exhibits A through F were admitted as stipulated findings of fact, and exhibits L through R, were admitted, by stipulation, as self-authenticating documents. *Page 4 
 {¶ 8} Pursuant to exhibit R, the parties stipulated that the children are bonded with each other and their foster mother, and that the three girls are bonded with their mother. It was also agreed that there are no extended-family relatives that have established a bond with the children.
 {¶ 9} In addition to the above-mentioned stipulated facts, evidence of the following was adduced.
 {¶ 10} During an October 11, 2005 client interview with Firelands Counseling and recovery services, Tina S. reported that the reason that she and the rest of the family had moved from Illinois was because there had been a number of cases involving their family and that state's department of job and family services. According to Tina S., there were at least ten such cases involving the children, with past allegations involving neglect and sexual abuse.
 {¶ 11} Abundant evidence was introduced to show the emotional states of the three female children, Carol S., Carmon S., and Sherry S., each of whom had been in counseling throughout the pendency of the case. Through the testimony of Sarah DiFilippo, the girls' therapist, it was established that the girls have suffered, and continue to suffer, from significant emotional problems, including extreme fears, anxiety and post traumatic stress disorder, and that, although they are making improvement, they will continue to need treatment. All of the girls reported sexual abuse by their father, and all are intensely fearful of him. Each of the girls reported having nightmares, the recurring theme of which involved their father trying to harm the family. *Page 5 
 {¶ 12} Testimony by DiFilippo and the girls' foster mother, Christine A., established that the integration of Tina S. into the girls' therapy resulted in the girls' regression into negative behaviors, including encopresis, enuresis, self-harm and stealing. Such regression apparently stemmed from Tina S.'s inability — even after therapy — to accept the girls' emotional state of mind and to act in a way that could improve their behavior and mental state of being. Specifically, the evidence showed that Tina S., upon hearing the disclosures of the girls concerning allegations of sexual abuse at the hands of their father, would question the girls' veracity and their understanding of what they were reporting had happened to them.
 {¶ 13} During her client interview with Firelands Counseling and Recovery Services, Tina S. admitted that she was confused about what to believe in connection with her girls' disclosures. Her parenting assessment reveals that she tested in the borderline range of intellectual functioning and that she suffers from intermittent depression and anxiety, often with psychotic overlays. In the parenting assessment recommendations, it was stated that "[Tina S.'s] demonstration of intermittent poor judgment, inability to be self sufficient and self reliant, her dependency on another [Leroy S., Jr.] and tendency to be influenced [,] as well as her parenting deficits all suggest that she could not effectively and safely single parent without sufficient support and ongoing monitoring."
 {¶ 14} Regarding Leroy S., Jr., with whom Tina S. continues to reside, the record reveals that he has undergone sex-specific evaluation, psychological testing and *Page 6 
treatment. In each evaluation he appears to have purposely failed to reveal significant information relating to the purpose of each evaluation that would have allowed accurate diagnosis and meaningful treatment. As one example, Leroy S. failed to reveal to the sex-specific evaluator prior inappropriate sexual behaviors and a documented residential placement that dealt with sexual behavior.
 {¶ 15} Additional evidence demonstrates that Leroy S., Jr. has a history of legal problems arising from, or otherwise related to, his anger. As an adult, he was discharged (less than honorably) from the U.S. Navy for aggression towards an officer. In addition, there was evidence that he completed a domestic violence assessment and a batterer's intervention program.
 {¶ 16} In connection with his parenting assessment, Leroy S., Jr. reported that he completed an anger management program in order to have a restraining order that had been filed by his wife terminated. According to the parenting assessment, the restraining order was issued following Leroy S., Jr.'s having gotten "upset with the kids."
 {¶ 17} Testimony by agency caseworker, Florence Dyer, established that none of the girls wants to even see their father, let alone return to his home; instead, they all want to remain with their foster mother. Dyer testified that the youngest sibling, Leroy S., III, simply does not know his father.
 {¶ 18} Julie Saleski, interim director of supervised visitation center Kinship House, testified as to the relationship between Tina S., and Leroy S., III. According to Saleski, there appeared to be very little, if any, bonding between mother and son. *Page 7 
 {¶ 19} Following the hearing, the court rendered its decision, awarding permanent custody of Carol S., Carmon S., Sherry S., and Leroy S., III, to the agency. Specifically, the trial court found that the children had been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999; that there was clear and convincing evidence that the children cannot and should not be placed with either parent within a reasonable period of time pursuant to R.C. 2151.414(E)(1) and(2); and that an award of permanent custody to the agency was in the children's best interest pursuant to R.C. 2151.414(D).
 {¶ 20} In support of its finding that the children cannot and should not be placed with either parent within a reasonable period of time, the trial court relied upon evidence demonstrating: (1) the emotional states of the children; (2) the mental problems of both parents; and (3) the parents' inability to substantially rectify the reasons that the children were removed in the first place.
 {¶ 21} In support of its determination that an award of permanent custody to the agency was in the children's best interest, the court specifically found that the bond between the children and their foster mother had become stronger than the bond between the children and the parents, especially as between the children and their father, and, also, that the children had bonded with their foster siblings.
 {¶ 22} In addition, the court found, in accordance with statements by the children's guardian ad litem and attorney, that the girls desired to remain in their foster placement *Page 8 
and did not with to return to their parents' care and custody. In making this finding, the court stated that it had considered the wishes of the children in light of their level of maturity and mental states. Specifically, the court concluded that the expression of the girls' desires was appropriately considered, but that Leroy S., III, lacked the maturity to express an opinion.
 {¶ 23} Noting that the children had been out of their parents' custody since November 2005, the court further concluded that the children, given their emotional states and ages, were in need of a legally secure placement, and that permanent placement could not be achieved without granting the agency's motion.
 {¶ 24} Concluding its best interest analysis, the trial court stated:
 {¶ 25} "The girls suffer from severe emotional trauma as a result of their experiences in their parents' care and custody. This trauma is evidenced by destructive, self-harming and recurring nightmares about their father. Their need for treatment will continue for a significant time in the future. Evidence revealed at trial that Mother and Father still reside together. It appears by clear and convincing evidence that returning the children now or in the near future would be detrimental to the children's best interests. In other words, the grant of the agency motion for permanent custody is in the children's best interest."
 {¶ 26} Finally, the court found that reasonable efforts had been made to make it possible for the children to return home, but that those efforts were ultimately unsuccessful. Specifically, the court found that the agency had offered directly, or had *Page 9 
provided through referral casework services: substitute care, counseling, case management, information and referral, visitation services through Kinship House, wraparound services, family therapy, parenting education, sex offender treatment, and domestic violence treatment.
 {¶ 27} Leroy S., Jr., and Tina S. each filed timely appeals. Leroy S., Jr., raises the following assignments of error in his appeal:
 {¶ 28} I. "THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF PAST RECOLLECTION RECORDED WITHOUT MEETING ALL OF THE REQUIRED ELEMENTS."
 {¶ 29} II. "THE TRIAL COMMITTED PREJUDICIAL ERROR AND THE JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SINCE THERE WAS NO EVIDENCE OF WHERE THE ABUSE/NEGLECT/DEPENDENCY OCCURRED OR OF THE CHILD'S [sic] RESIDENCE."
 {¶ 30} III. "THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 31} Tina S. raises the following assignments of error in her appeal:
 {¶ 32} I. "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN THE TRIAL COURT TERMINATED THE PARENTAL RIGHTS OF APPELLANT AND GRANTED PERMANENT CUSTODY OF THE MINOR CHILDREN TO THE ERIE COUNTY DEPARTMENT OF JOB AND *Page 10 
FAMILY SERVICES WHERE THE EVIDENCE FAILED TO SATISFY THE REQUISITE STANDARD OF PROOF."
 {¶ 33} II. "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL THROUGHOUT THE TRIAL ON PERMANENT CUSTODY."
 {¶ 34} Leroy S., Jr. argues in his first assignment of error that the trial court erred in admitting evidence of past recollection recorded "without meeting all of the required elements." In connection with this argument, he challenges certain testimony by clinical psychologist Shealynne Baus, clinical counselor Mary Kay Baumgartner, and mental health therapist Catherine Hall. The state asserts that most of the cited testimony was properly introduced, not as past recollection recorded, but rather as present recollection refreshed.
 {¶ 35} Evid. R. 803(5) deals with "past recollection recorded," and relevantly provides:
 {¶ 36} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 {¶ 37} "* * *
 {¶ 38} "(5) Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown by the testimony of the witness to have been made or adopted when the matter was fresh in his memory and to reflect that *Page 11 
knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party."
 {¶ 39} "The admission of a written document pursuant to Evid. R. 803(5) is permissible when: (1) the writing concerns a matter [of] which the witness once had personal knowledge; (2) the writing was prepared when the matter was fresh in the memory of the witness; and (3) the witness had no independent recollection of the matter." In the Matter of: BabyC, 10th Dist. No. 05AP-1254, 05AP-1256, 2006-Ohio-2067, ¶ 74, citingState v. Scott (1972), 31 Ohio St.2d 1, United States v. Williams
(C.A.6, 1978), 571 F.2d 344.
 {¶ 40} Evid. R. 612 deals with using a writing to refresh the memory of a witness, and relevantly provides:
 {¶ 41} "[I]f a witness uses a writing to refresh memory for the purpose of testifying, either: (1) while testifying; or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing. The adverse party is also entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. * * *"
 {¶ 42} In order to refresh the recollection of a witness pursuant to Evid. R. 612: (1) the memory of the witness must be exhausted or nearly exhausted; (2) the writing must refresh the recollection of the witness; and (3) the opposing party must be provided an opportunity to inspect the writing and further cross-examine the witness with regard to *Page 12 
that writing. In the Matter of: Baby C, supra, at ¶ 72. We note that "the extent to which a party may refresh the recollection of his own witness is ordinarily a matter for the trial court's discretion." Id., citing State v. Steams (1982), 7 Ohio App.3d 11, 16.
 {¶ 43} In the instant case, Leroy S., Jr. challenges direct examination testimony of psychologist Baus, wherein she stated that she would have to refresh her recollection concerning the exact dates she had met with appellants. In response to this statement, Baus was handed a document marked exhibit S, which she identified as her psychological report of Tina S. Upon further questioning by the state, Baus indicated that she had signed the report and that exhibit S was the original document that she had signed. Baus then described her standard protocol for conducting a psychological evaluation and acknowledged that she used that protocol when she dealt with Tina S.
 {¶ 44} We find that the highlighted testimony — wherein the witness merely identified a document and her signature thereon and then proceeded to describe her standard evaluation protocol — does not constitute past recollection recorded (nor, for that matter, does it constitute present recollection refreshed). At no point during this testimony was the substance of exhibit S read into evidence. Accordingly, we find that Leroy S., Jr.'s argument is without merit.
 {¶ 45} Leroy S., Jr. next challenges direct examination testimony of counselor Baumgartner, wherein she: (1) identified exhibit U as the sex specific evaluation that she had completed for Leroy S., Jr.; and (2) responded to the state's request for information she had used in order to make her sex specific determination for Leroy S., Jr. In *Page 13 
answering the state's request, the court permitted Baumgartner to "refresh her recollection" by referring to exhibit U. Baumgartner then testified:
 {¶ 46} "I looked at, I had a phone interview with [Leroy S., Jr.]. I completed testing. Let's see, other information was a police report dated July 28th, 1997. A letter with a case history from Erie County Children Services social worker Shannon Smith dated March 2nd, 2006. Counseling progress report from Firelands Counseling dated February 2, 2006. Interviews of Carol, Carmon and Sherry [S.] dated October 3rd, 2005. Family notes of phone calls to caseworker Shannon Smith dated January 19th, 24th, 30th and February 23rd, 2006. A Sandusky Police Department incident report dated September 30th, 2005. An Erie County Children's Services case plan dated February 28th, March 15th, 2006."
 {¶ 47} Baumgartner was next asked whether, "looking at the report," she noticed anything of significance in her results concerning Leroy S., Jr.'s mental status. Baumgartner responded by highlighting some of the material contained in her report.
 {¶ 48} Regarding the disputed portions of Baumgartner's testimony, we find that the record indicates the existence of a foundation sufficient to satisfy the requirements of Evid. R. 612. That is, Baumgartner's memory was clearly exhausted or nearly exhausted, and review of the evaluation refreshed her memory. See In the Matter of Baby C, supra, at ¶ 72. In addition, counsel for Leroy S., Jr., was able to inspect the evaluation document and cross-examine the witness. Id. *Page 14 
 {¶ 49} Even if the trial court erred in admitting portions of Baumgartner's testimony, the error was harmless and did not prejudice Leroy S., Jr.'s defense. See, id., at ¶ 90. We note, in this regard, that none of the challenged testimony was even mentioned in the trial court's judgment entry.
 {¶ 50} Additional disputed testimony by Baumgartner involves her review of exhibit T, which was the psychological evaluation prepared by clinical psychologist Baus, and exhibit H, which contained various mental health records of Leroy S., Jr. Neither of these exhibits was prepared by Baumgartner, nor did she testify to them. Instead, upon her review of the documents, she testified that had she known the information that was contained therein, her sex specific evaluation of Leroy S., Jr., would have yielded a different result. Evid. R. 803(5) and 612 are simply inapplicable to this testimony.
 {¶ 51} Finally, Leroy S., Jr., challenges testimony by therapist Hall, wherein she briefly read a portion of her case notes into the record as she was checking to make sure that she was testifying as to the correct child. Specifically, she stated:
 {¶ 52} "I am so sorry. Okay. He pulled down, let me look here. Yes. I tried running away one time and he found me. I told grandma and she cried a lot. I am scared to be with my dad, said client. Mom caught dad three times and chased him with a knife, but he just picked her up and put her in a trash can and called her a piece of garbage. He treated my mom like trash." *Page 15 
 {¶ 53} We note that, both before and after she gave the disputed testimony, Hall testified extensively about the children and their disclosures, without referring to her notes. The disputed testimony, even if improper, was harmless and did not unfairly prejudice Leroy S., Jr. Accordingly, Leroy S., Jr.'s first assignment of error is found not well-taken.
 {¶ 54} Leroy S., Jr. argues in his second assignment of error that the trial court committed prejudicial error and the judgment was against the manifest weight of the evidence because "there was no evidence of the children's residence." We disagree. R.C. 2151.23 governs the jurisdiction of juvenile courts and pertinently provides:
 {¶ 55} "(A) The juvenile court has exclusive jurisdiction under the Revised Code:
 {¶ 56} "(1) Concerning any child who on or about the date specified in the complaint is alleged to be a[n] * * * abused, neglected, or dependent child;
 {¶ 57} "(2) * * * [T]o determine the custody of any child not a ward of another court of this state[.]"
 {¶ 58} The Supreme Court of Ohio, in In re Poling (1992),64 Ohio St.3d 211, held that pursuant to R.C. 2151.23(A), a juvenile court has jurisdiction to determine the custody of a child alleged to be abused, neglected, or dependent, when that child is not the ward of any court in Ohio. Id., at paragraph one of the syllabus; see, also, In re Meyer andIn re Martin (1994), 98 Ohio App.3d 189, 192. In the instant case, it is undisputed that, Carol S. was found to be abused, neglected, and dependent, that Carmon S. and Sherry S. were found to be neglected and dependent, and that Leroy S., III *Page 16 
was found to be dependent. It is also undisputed that, outside of the involvement of the Erie County Court of Common Pleas in this case, the children are not wards of any other court in Ohio. Consequently, the Erie County Court of Common Pleas, Juvenile Division, had jurisdiction to determine the issue of the permanent custody of the children.[1]
Leroy S., Jr.'s second assignment of error is, therefore, found not well-taken.
 {¶ 59} We will next consider Tina S.'s first assignment of error, wherein she argues that the permanent custody decision was not supported by sufficient proof and, further, was against the manifest weight of the evidence.
 {¶ 60} R.C. 2151.353 controls the disposition of a child determined to be dependent, neglected or abused. Pursuant to that statute, a court may enter any order of disposition provided for in R.C. 2151.353(A), including an order committing the child to the permanent custody of a public children services agency. But before the court can grant permanent custody of a child to a public services agency the court must determine, by clear and convincing evidence: (1) that the child cannot be placed with one of his parents within a reasonable time or should not be placed with a parent, pursuant to *Page 17 
R.C. 2151.414(E); and (2) that the permanent commitment is in the best interest of the child, pursuant to R.C. 2151.414(B), (D); R.C. 2151.353(A)(4); see, also, In the Matter of Carlos R. III, 6th Dist. No. L-07-1194, 2007-Ohio-6358, ¶ 21.
 {¶ 61} R.C. 2151.414(E) provides that a court, in determining whether a child cannot be placed with a parent within a reasonable time or should not be placed with a parent, shall consider all relevant evidence. R.C. 2151.414(E) additionally provides that if the court determines by clear and convincing evidence that any one of 16 factors listed in the statute exist, the court must find that the child cannot be placed with the parent within a reasonable time or should not be placed with the parent. Id. Those factors include:
 {¶ 62} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. *Page 18 
 {¶ 63} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the [permanent custody hearing].
 {¶ 64} "* * *
 {¶ 65} "(16) Any other factor the court considers relevant." R.C. 2151.414(E).
 {¶ 66} Clear and convincing evidence is that evidence which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proven. Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 67} With respect to determining the best interest of the child, R.C. 2151.414(D) directs that the court shall consider all relevant factors, including:
 {¶ 68} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 69} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 70} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *; *Page 19 
 {¶ 71} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 72} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 73} A court's decision to terminate parental rights will not be reversed as being against the manifest weight of the evidence as long as the record contains competent credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established.In re S. (1995), 102 Ohio App.3d 338, 345; Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus; see, also, In the matterof: Amber M, 6th Dist. No. WM-05-003, 2005-Ohio-4172, ¶ 59.
 {¶ 74} Issues involving the weight of the evidence and the credibility of witnesses are primarily for the trier of fact. As the court explained in Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77: "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id., at 80.
 {¶ 75} Upon a thorough review of the record in this case, we conclude that the trial court's determinations that Carol S., Carmon S., Sherry S., and Leroy S., III, could not be placed with their parents within a reasonable time and should not be placed with them, *Page 20 
and that permanent custody was in Carol S.'s, Carmon S.'s, Sherry S.'s, and Leroy S., III's best interest, were supported by clear and convincing evidence.
 {¶ 76} Accordingly, we find that there was clear and convincing evidence to support the trial court's findings, under R.C. 2151.414(E)(1), that Leroy S., Jr. and Tina S. failed to remedy the conditions that caused Carol S., Carmon S., Sherry S., and Leroy S., III to be removed from the family home.
 {¶ 77} In the instant case, Tina S. challenges the trial court's finding, made pursuant to R.C. 2151.414(D), that the award of permanent custody was in the children's best interest.
 {¶ 78} First, she disputes the trial court's finding in light of the children's interactions and interrelationships with the people of significance in their lives. As indicated above, the trial court found that the bond between the children and their foster mother had grown stronger than the bond between the children and the parents, especially as between the children and their father. In an apparent attempt to counter to this finding, Tina S. states that her children enjoyed a meaningful and loving relationship with her, and that she had demonstrated her commitment to them by completing her case plan and regularly attending her parenting time with them. She further states that "[t]he only negative allegation that was made with respect to mother's bonding was that she was not as bonded to [Leroy S., III]."
 {¶ 79} Even accepting Tina S.'s allegations as true, they fail to affect the validity of the trial court's conclusions in this case. That is, even accepting that the children had a *Page 21 
meaningful and loving relationship with their mother, undisputed evidence revealed that the interaction and interrelationship of the children with their foster mother was very strong. Also undisputed was evidence demonstrating that the interaction and interrelationship of the girls with Leroy S., Jr. — with whom Tina S. continued to reside — had had devastating consequences with respect to the girls' emotional health and well-being. Based on the foregoing, we find that the trial court's findings were overwhelmingly supported by clear and convincing, and competent and credible evidence.
 {¶ 80} Tina S. next disputes the trial court's consideration of the girls' desire to continue to reside with their foster mother and to remain outside of their parents' care and custody. Erroneously stating that the children's ages at the time of trial were 9, 8, 7, and 4, Tina S. baldly alleges that none was old enough to express a mature opinion. In fact, the children's ages at the time of the permanent custody hearing were 11, 9, 8, and 5. Moreover, the trial court, in its judgment entry, expressly stated that it had considered the wishes of the children in light of their level of maturity and mental states. Concluding that only the girls possessed the maturity to express an opinion, the trial court disregarded the reported wishes of Leroy S., III. As indicated above, issues involving the weight of the evidence and the credibility of witnesses are primarily for the trier of fact. Nothing in the record refutes the trial court's determination that the wishes of the girls were deserving of consideration. *Page 22 
 {¶ 81} Next, Tina S. argues that the fact that the children had been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period should have had no bearing on the permanent custody determination in this case "other than to suggest that the best interest of the children [was] served by returning the children to their mother's care." This argument is nonsensical, at best, and will be given no additional consideration.
 {¶ 82} Finally, Tina S. disputes the trial court's finding that the children were in need of a legally secure placement and that permanent placement could not be achieved without granting the agency's motion. Specifically, she argues that "nothing was shown that a return of the children to the mother was insecure." Per our discussions above, we find the record replete with evidence to the contrary. For the foregoing reasons, Tina S.'s first assignment of error is found not well-taken.
 {¶ 83} Finally, we consider together Leroy S., Jr.'s third and Tina S.'s second assignments of error, both of which contain allegations of ineffective assistance of counsel. To prove a claim for ineffective assistance of counsel, a party must first show that counsel's performance was deficient. Strickland v. Washington (1984),466 U.S. 668, 687. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed under theSixth Amendment to the United States Constitution. Id. The party must then show that counsel's deficient performance resulted in prejudice; that is, the party must demonstrate a reasonable probability that, but for counsel's deficiencies, the result of the proceedings would have been different. Id. at *Page 23 
694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "Prejudice" exists only when counsel's performance renders the result of the proceedings unreliable or the proceedings, themselves, unfair. Id. at 696.
 {¶ 84} "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. A properly licensed attorney is presumed competent. State v. Smith (1985), 17 Ohio St.3d 98, 100. Further, counsel's actions that "might be considered sound trial strategy" are presumed effective. Strickland, supra, at 689.
 {¶ 85} Leroy S., Jr. and Tina S. each argue that their respective counsel was deficient for failing to object to the admission of evidence of past recollection recorded. As indicated above, the admission of the challenged testimony in this case was either proper or constituted harmless error. Thus, counsel's failure to object to that testimony was either not error or, in the alternative, did not result in prejudice to appellants.
 {¶ 86} Leroy S., Jr. additionally argues that his counsel was ineffective for failing to raise the issue of proper jurisdiction during the permanent custody hearing. As jurisdiction was proper in this case, appellant's counsel did not err in failing to raise the issue.
 {¶ 87} Tina S. makes a blanket assertion, without any citation to the record, that her counsel was deficient in failing to object to "any of the hearsay testimony of the children at any point in the proceedings." Without citation to the record, we decline to give this argument additional consideration. *Page 24 
 {¶ 88} Finally, both Leroy S., Jr. and Tina S. assert that their respective counsel was ineffective for failing to present evidence. We note in this case that both parties stipulated at the beginning of the hearing that: (1) they believed it was in the best interest of their children that they not oppose the motion for permanent custody; and (2) they consented to the court's grant of permanent custody. In light of these stipulations, trial counsel's failure to present evidence was absolutely consistent with the wishes of the parties. We note that, even with these stipulations, counsel for both parties participated in cross-examination of the witnesses. In addition, counsel for Tina S. presented a closing argument. In light of the stipulations, counsel for neither party was deficient in failing to present evidence on behalf of his or her client.
 {¶ 89} Leroy S., Jr. asserts, without citing any authority, that his counsel was deficient for failing to present a closing argument. We disagree. Under the circumstances of this case, where Leroy S., Jr. had consented to the granting of permanent custody, the decision of Leroy S., Jr.'s counsel not to present a closing argument was neither erroneous nor prejudicial.
 {¶ 90} Tina S. asserts — for the first time on appeal — that she consented to the granting of permanent custody only because "she was advised by her counsel that she should consent so that she could have hopes for a relationship with the children following the permanent custody matter." We find that her reason for giving her consent in no way negates the validity of the consent itself. We note that Tina S.'s consent, together with all *Page 25 
of the other stipulations, was accepted by the court only after the court became convinced that such had been knowingly and voluntarily provided.
 {¶ 91} We additionally note that Tina S. was present during the vast majority of the permanent custody hearing. (According to the trial court's judgment entry, she left the courtroom on the first morning, but returned in the afternoon, and was present for the remainder of the proceedings.) Nothing in the record suggests that there was any desire on the part of Tina S., during the permanent custody proceedings, to withdraw her consent. In light of the foregoing, we find that Tina S.'s counsel's representation in this case was neither deficient nor prejudicial.
 {¶ 92} For all of the foregoing reasons, Leroy S., Jr.'s third assignment of error and Tina S.'s second assignment of error are found not well-taken.
 {¶ 93} The judgment of the Erie County Court of Common Pleas, Juvenile Division, is affirmed. Appellants are ordered to divide the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4. *Page 26 
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., William J. Skow, J. CONCUR.
[1] We additionally note that counsel for Leroy S., Jr., during a discussion on the record with the court and counsel for the state, expressly acknowledged the trial court's jurisdiction in this case. That discussion took place as follows:
THE COURT: "* * * Jurisdiction is where the children and the parents reside."
COUNSEL FOR LEROY S., JR.: "That is correct."
THE COURT: "Which is here."
 COUNSEL FOR LEROY S., JR.: "That is correct, Your Honor." *Page 1