[Cite as *State v. Alliman*, 2023-Ohio-206.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio                                    Court of Appeals No. OT-21-024

      Appellee                              Trial Court No.  2020 CRI 036A

v.

James Alliman                                **DECISION AND JUDGMENT**

      Appellant                             Decided:  January 25, 2023

* * * * *

James J. VanEerten, Ottawa County Prosecuting Attorney, and
Thomas A. Matuszak, Assistant Prosecuting Attorney, for appellee.

Michael H. Stahl, for appellant.

* * * * *

**OSOWIK, J.**

## I.      Introduction

{¶ 1} Appellant, James Alliman, appeals the judgment of the Ottawa County Court

of Common Pleas, sentencing him to life in prison without the possibility of parole

following a jury trial at which he was found guilty of ten counts of rape.  For the

foregoing reasons, we affirm.

## A. Facts and Procedural Background

{¶ 2} On February 6, 2020, appellant was indicted on nine counts of rape of someone under the age of 13 in violation of R.C. 2907.02(A)(1)(b), felonies of the first degree, and one count of rape by force or threat of force in violation of R.C. 2907.02(A)(2), a felony of the first degree. These charges were brought after one of the victims, B.A., informed her school counselor in September 2019 that appellant, her father, began sexually abusing her in 2009, when she was nine years old. Following that disclosure, B.A.'s sister, V.A., also came forward with allegations that appellant sexually abused her as well, beginning when she was only five years old.[1]

{¶ 3} On February 28, 2020, appellant appeared before the trial court for arraignment, at which time he entered pleas of not guilty to the aforementioned charges. Following pretrial discovery and motion practice, the matter proceeded to a three-day jury trial on June 28, 2021.

{¶ 4} At trial, the state called seven witness, including B.A. and V.A., the substance of whose testimony we will outline below as needed to dispose of appellant's assignments of error. Appellant did not call any witnesses of his own, nor did he take the stand in his own defense. At the conclusion of the trial, the jury found appellant guilty of

---

[1] B.A. was born in 2001, and V.A. was born in 2003.

2.

all ten counts of rape contained in the indictment. The trial court then continued the matter for sentencing.

{¶ 5} Appellant's sentencing hearing was held on July 29, 2021. Prior to the trial court's imposition of sentence, appellant's defense counsel objected to the trial court's failure to order a presentence investigation report in this case. The court responded by noting that such a report is not mandatory prior to sentencing, and stated: "I don't believe a P.S.I would be helpful in any way." The trial court explained that it was particularly impacted by "the pain I could hear and see from the victims in this case. This was a difficult case for even someone who has been around as long as me to listen to." Thereafter, the court noted its consideration of the principles and purposes of sentencing under R.C. 2929.11 as well as the seriousness and recidivism factors under R.C. 2929.12.

{¶ 6} Ultimately, the trial court imposed prison terms of ten years to life for seven of the rape counts (counts one, five, six, seven, eight, nine, and ten), 11 years for one of the rape counts (count two), and life without the possibility of parole for the remaining two rape counts (counts three and four), for which the jury found that the victim was under the age of ten years old at the time of the rape. The court ordered appellant's sentences served consecutively "for a total of 81 years to life in prison, plus two life sentences without the possibility of parole."

{¶ 7} At the hearing, the trial court found, pursuant to R.C. 2929.14, that consecutive sentences were necessary to protect the public from future crime or punish

3.

appellant and were not disproportionate to the seriousness of appellant's conduct and the danger he poses to the public. Further, the court found that two or more of appellant's offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of appellant's conduct. In its subsequent sentencing entry, the trial court noted its findings under R.C. 2929.14, as well as its consideration of the principles and purposes of sentencing and the seriousness and recidivism factors under R.C. 2929.11 and 2929.12, respectively.

{¶ 8} Following sentencing, on August 23, 2021, appellant filed his timely notice of appeal.

## B.    Assignments of Error

{¶ 9} On appeal, appellant assigns the following errors for our review:

Assignment of Error I: Counsel, though licensed, failed to comprehend the rules of evidence and failed to object to the admission of hearsay "timeline" statements which were openly created by government agents, as well as a hearsay exhibit from the State's Expert, and therefore deprived Mr. Alliman of his right to effective counsel and to confront the witnesses against him as provided by the Ohio and United States Constitutions, and permitted the State to improperly impeach its own witnesses.

4.

Assignment of Error II: Counsel, though licensed, utterly failed to investigate the basic facts of the case to such an extent that in opening counsel promised the jury that the defense would call a witness to deny an alleged uncharged incident of sexual assault, when in fact counsel bungled both the foundation of the issue, and the basic facts of the claim and did not call the promised witness.

Assignment of Error III: Counsel, though licensed, failed to object under the proper evidentiary rule to highly prejudicial, inadmissible character evidence which should have been objected to under Evid. Rule 403 or 404, and failed to request a curative instruction when a motion was granted, denying Mr. Alliman his right to counsel under the Ohio and U.S. Constitutions.

Assignment of Error IV: Trial counsel utterly failed to engage in meaningful cross examination throughout the case, failed to seek a mistrial on multiple issues and failed to present a favorable case in closing, depriving Mr. Alliman of his right to counsel under the Ohio and U.S. Constitutions.

Assignment of Error V: Failure to comply with Crim.R. 16(K) renders an expert's testimony inadmissible and the failure to renew an objection to the admission of that expert testimony or a withdrawal of that

objection cannot be excused as trial strategy and constitutes ineffective assistance of counsel. In a case that hinges primarily on "credibility," the prejudice prong of *Strickland/Bradley* is established.

Assignment of Error VI: The trial court erred in allowing expert testimony that was given in violation of Crim.R. 16(K).

Assignment of Error VII: The trial court erred in allowing a witness to give testimony reserved for expert opinion over the repeated objections of trial counsel.

Assignment of Error VIII: The Appellant was denied due process and a fair trial pursuant to U.S. Const. amend. V, VI and XIV and Ohio Const. art. 1 §10 when the Prosecutor engaged in misconduct throughout the trial and in the closing statements at trial, which conduct substantially prejudiced the Appellant and misled the jury.

Assignment of Error IX: The trial court erred when it imposed consecutive sentences as the record does not support the court's findings under R.C. 2929.11 and 2929.12.

Assignment of Error X: The Appellant was denied due process and a fair trial as the errors committed by the Trial Court, the Prosecutor and Appellant's trial counsel combined to deny the Appellant a fair trial.

{¶ 10} For ease of discussion, we will address appellant's assignments of error out of order, beginning with his sixth and seventh assignments of error, which we will examine together as they both relate to the trial court's admission of evidence. Further, in each of his first five assignments of error, appellant asserts ineffective assistance of error. Since they are interrelated, we will address these assignments of error together.

## II. Analysis

### A. Admission of Expert Testimony

{¶ 11} In his sixth and seventh assignments of error, appellant argues that the trial court erred in allowing expert testimony at trial.

{¶ 12} It is within the broad discretion of the trial court whether to admit or exclude expert testimony. *In re Te.R.*, 6th Dist. Lucas No. L-15-1015, 2015-Ohio-5498, ¶ 16. The trial court's decision will not be reversed absent an abuse of discretion. *Id.* An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

#### i. Mindy Koskela

{¶ 13} In his sixth assignment of error, appellant argues that the trial court erred in permitting the state to call Mindy Koskela to testify as an expert at trial.

{¶ 14} Before trial, on April 14, 2021, appellant filed a motion seeking to compel disclosure of Koskela's expert report or, in the alternative, to disqualify Koskela from

7.

testifying as an expert absent such a report. According to appellant, the state had, up to that point, failed to provide him with an expert report under Crim.R. 16(K) that contained any expected testimony that was specific to this case.

{¶ 15} The trial court held a hearing on April 22, 2021, at which time the state responded to appellant's motion and indicated that Koskela had not interviewed either victim in this case and was thus not expected to render an opinion as to whether either victim was sexually abused. Instead, the state wanted to call Koskela to testify about what kinds of childhood behaviors are consistent with sexual abuse in general. As such, the state argued that the discovery it had already provided to appellant, specifically Koskela's curriculum vitae and a summary of her testimony, was sufficient under Crim.R. 16(K).

{¶ 16} In response, appellant agreed that Koskela's curriculum vitae was sufficient to establish her as an expert in general, but argued that she could not testify in this case because Crim.R. 16(K) requires the state to provide an expert report ahead of trial, which the state failed to do. Appellant complained that Koskela "has never even met with these victims," and that he had "no idea what she is going to say when we are talking about these specific alleged victims."

{¶ 17} Finally, the state asserted that appellant's argument was misplaced, because "[t]here is no requirement within [Crim.R.] 16(K) that requires that an expert personally meet with a victim in a child sexual assault case."

8.

{¶ 18} Upon consideration of the parties' arguments, the trial court decided to allow Koskela to testify and thus deny appellant's motion. In denying the motion, the trial court rejected appellant's contention that Koskela had to have some familiarity with the victims in this case in order to testify.

{¶ 19} At trial, the state called Koskela to testify, and began by questioning Koskela about her credentials as a licensed professional clinical counselor. After admission of Koskela's curriculum vitae, the state sought to qualify her as an expert in the field of counseling and treatment for victims of sexual assault. Defense counsel leveled no objection to the state's request at trial. Instead, defense counsel acknowledged that Koskela "is wildly qualified."

{¶ 20} Thereafter, Koskela identified the warning signs of child sexual abuse at various stages of development including, among other things, anger and self-harm. She further explained the prevalence of delayed disclosure of sexual abuse among children, noting that "somewhere around 70% [of children are] likely to disclose a year after abuse occurred; and then even around 40-some percent, up to five years after abuse has occurred."

{¶ 21} Koskela offered no testimony as to the facts of this case or the credibility of B.A. or V.A. Indeed, Koskela acknowledged that she never met or spoke with either victim, nor had the state provided her with any police reports or recorded statements for her to review prior to trial. Therefore, Koskela ultimately rendered no expert opinion as

9.

to whether B.A. or V.A. were sexually abused by appellant. On recross examination, defense counsel asked Koskela, "So you don't even know for sure, because you could not say, that the alleged victims in this case are even victims, correct?" Koskela responded in the affirmative.

{¶ 22} In his brief to this court, appellant asserts that the state, in refusing to provide an expert report for Koskela, failed to comply with the requirements of Crim.R. 16(K). Appellant's argument fails for two reasons.

{¶ 23} First, appellant waived this argument by failing to challenge Koskela's testimony at trial. It is well settled that "the grant or denial of [a motion in limine] is not a ruling on the evidence." *Mason v. Swartz*, 76 Ohio App.3d 43, 55, 600 N.E.2d 1121 (6th Dist.1991), citing *State v. Grubb*, 28 Ohio St.3d 199, 201, 503 N.E.2d 142 (1986). Instead, such a ruling "is a preliminary interlocutory order and the objection must be raised again at trial in order to permit the court to consider the admissibility of the evidence in its actual context. * * * Therefore, failure to object to the evidence at trial waives the right of the objecting party to raise the court's ruling on the preliminary motion as error on appeal." *Id.*

{¶ 24} Here, appellant objected to Koskela's testimony two months prior to trial, at which point the trial court denied appellant's motion and deemed Koskela's testimony admissible. The trial court's liminal decision required an objection at trial once the state sought to introduce Koskela's testimony. However, appellant raised no objection when

10.

the state called Koskela to testify. Therefore, appellant waived his right to challenge the trial court's ruling to permit Koskela to testify on appeal.

{¶ 25} Furthermore, appellant's argument under Crim.R. 16(K) fails on its merits. Crim.R. 16(K) provides:

> (K) Expert Witnesses; Reports. An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

{¶ 26} Several months before trial, the state provided appellant with Koskela's curriculum vitae outlining her qualifications as an expert in the field of counseling and treatment for victims of sexual assault. At this time, the state also furnished a summary of Koskela's anticipated testimony, which listed two general areas of anticipated testimony, namely testimony as to the signs and symptoms of sexual abuse and testimony about the delayed disclosure of sexual abuse. Because Koskela interviewed neither B.A. nor V.A., the expert report did not include any findings, analysis, conclusions, or opinion

as to whether the two victims were sexually abused. However, the summary provided by the state contained all of the information that Koskela ultimately ended up providing during her testimony at trial.

{¶ 27} "'The purpose of Crim.R. 16(K) is to avoid unfair surprise by providing notice to the defense and allowing the defense an opportunity to challenge the expert's findings, analysis, or qualifications, possibly with the support of an adverse expert who could discredit the opinion after carefully reviewing the written report.'" *State v. Walls*, 2018-Ohio-329, 104, N.E.3d 280, ¶ 27, quoting *State v. Buck*, 2017-Ohio-273, 81 N.E.3d 895, ¶ 33 (9th Dist.). The state provided Koskela's report to appellant more than 21 days in advance of trial, and that report contained an outline of Koskela's qualifications and a summary of the entirety of Koskela's testimony. Thus, we find that appellant was provided with notice and an opportunity to defend against Koskela's testimony, and therefore was not subject to unfair surprise. The state complied with the dictates of Crim.R. 16(K). For this additional reason, appellant's argument that the trial court erred in allowing Koskela to testify is without merit. Accordingly, appellant's sixth assignment of error is not well-taken.

### ii.    Diane Ottney

{¶ 28} In his seventh assignment of error, appellant argues that the trial court erred in allowing the state to call Diane Ottney to testify at trial as an expert.

12.

{¶ 29} Following Koskela's testimony, the state called Diane Ottney to testify. Ottney indicated that she is a licensed independent social worker who specializes in mental health. After asking her about her professional credentials, the state asked Ottney to identify the symptoms of child sexual abuse that she had observed over the course of her 13-year career dealing with hundreds of abused children.

{¶ 30} Defense counsel objected to this line of questioning on the basis that Ottney was not qualified as an expert and the state did not provide an expert report for Ottney as required under Crim.R. 16(K). The trial court overruled the objection and observed that Ottney was not rendering expert testimony.

{¶ 31} Thereafter, the state notified the court that it would "pursue and use [Ottney] as a fact witness at this point." During the remainder of Ottney's testimony, she discussed her involvement with B.A. and V.A. as their mental health counselor, and described the girls' symptoms and ongoing mental health struggles.

{¶ 32} Our review of Ottney's testimony belies appellant's contention that she offered expert testimony. Instead, consistent with its representation to the court at trial, the state was careful to question Ottney as a lay witness and did not elicit any expert testimony from her.

{¶ 33} "The distinction between lay and expert witness opinion testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists

13.

in the field.'" *State v. McKee*, 91 Ohio St.3d 292, 297 fn. 2, 744 N.E.2d 737 (2001), quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992), *superseded on other grounds by statute*.

{¶ 34} Here, Ottney utilized her first-hand knowledge of child sexual abuse to draw conclusions that a rational person would form based on the observed facts. Specifically, Ottney identified common symptoms of child sexual abuse that she noticed while dealing with hundreds of victims throughout her career. She later testified as to certain behaviors she observed while counseling B.A. and V.A. At no point did she apply a specialized process of reasoning available only to specialists. Moreover, to the extent she offered opinions or drew inferences during her testimony, those opinions and inferences were "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Evid.R. 701. As such, Ottney testified as a lay witness, not an expert witness.

{¶ 35} Since Ottney did not testify as an expert, the trial court did not abuse its discretion in allowing her to testify without qualifying her as an expert. Accordingly, appellant's seventh assignment of error is not well-taken.

## B.      Ineffective Assistance of Counsel

{¶ 36} In his first five assignments of error, appellant argues that he was deprived of the effective assistance of trial counsel.

14.

**{¶ 37}** To demonstrate ineffective assistance of counsel, appellant must first show that trial counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because "effective assistance" may involve different approaches or strategies, our scrutiny of trial counsel's performance "must be highly deferential" with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 689.

**{¶ 38}** Should appellant demonstrate his trial counsel's performance was defective, appellant must also demonstrate that prejudice resulted. *Bradley* at paragraph two of the syllabus. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694. "The error must be so serious as to 'undermine confidence in the outcome.'" *State v. Lloyd*, --- Ohio St.3d ----, 2022-Ohio-4259, --- N.E.3d ----, ¶ 18, quoting *Strickland* at 694.

### i. Admission of State's Exhibit Nos. 1 and 2

**{¶ 39}** Here, appellant argues that he was deprived of the effective assistance of trial counsel in several ways. In his first assignment of error, appellant contends that his trial counsel was ineffective for failing to object to two of the state's exhibits, State's Exhibit Nos. 1 and 2, which are styled as timelines of events relevant to this case for B.A.

and V.A., respectively. According to appellant, these timelines were prepared by the state and thus constitute inadmissible hearsay that do not fit within any of the hearsay exceptions in the Rules of Evidence.

{¶ 40} Before addressing appellant's argument, we will review the trial testimony provided by B.A. and V.A. Upon taking the stand at trial, B.A. stated that she attended Penta High School from 2018 through 2020, where she became close with the school counselor, Callie Haas. B.A. stated that she first met Haas during her sophomore year of high school. Over time, she became close with Haas.

{¶ 41} During her senior year of high school, B.A.'s school attendance became an issue. Haas attempted to contact B.A., but B.A. decided to change her phone number shortly before she stopped attending school. B.A. articulated her reasoning behind changing her phone number as follows: "I didn't want my dad's side of the family knowing my new phone number. I was ready to put just that side away and move on." Eventually, Haas was able to make contact with B.A., and an in-person meeting at the school ensued during which B.A. informed Haas that she was the victim of prior acts of sexual abuse involving appellant.

{¶ 42} At trial, B.A. testified that she was ten years old when the first instance of abuse occurred. B.A. recalled that the abuse occurred in the fall, but she could not recall whether it was in 2009, 2010, or 2011. Consequently, the following colloquy between the state and B.A. took place:

16.

Q. [B.A.], in preparation for trial, did you create a timeline?

A. I did.

Q. And, if you reviewed that timeline, would that help refresh your recollection?

A. It would.

[DEFENSE COUNSEL]: Objection. How is this not leading? She can't answer the question and they have to give her a timeline created in their own office? This is beyond leading.

THE COURT: This is refreshing of recollection. Go ahead.

{¶ 43} Thereafter, B.A. reviewed State's Exhibit No. 1, and clarified that the first instance of abuse occurred in the fall of 2010, when she was nine years old. B.A. testified as to the particulars of the sexual abuse, confirming that appellant "pulled my pants down and kind of got on top of me a little bit. And that's when he put his penis in my vagina." Afterwards, appellant cautioned B.A. not to tell anyone about the abuse, and threatened to kill her if she did so.

{¶ 44} B.A. later testified about a second incident of sexual abuse involving appellant, which occurred in August 2016, the day before she entered her freshman year of high school. During her testimony, B.A. recounted the details of the second incident, which included penile penetration. B.A. was 15 years old at the time.

17.

{¶ 45} At the close of the its direct examination of B.A., the state returned to State's Exhibit No. 1, and asked B.A. if she recognized timeline depicted in the exhibit, whether she was involved in the preparation of the exhibit, and whether the words used in the exhibit were consistent with her description of the two incidents of sexual abuse involving appellant. B.A. responded in the affirmative as to all three questions.

{¶ 46} Following B.A.'s testimony, the state called V.A. to the stand and elicited testimony from her as to the details of several instances of sexual abuse involving appellant. In sum, V.A. testified that appellant vaginally raped her on 12 occasions, beginning in 2008, when she was five years old, and ending when appellant moved out of her home in 2016, when she was 13 years old. Nine of the incidents occurred before V.A.'s thirteenth birthday. After V.A. summarized each incident, the state handed her State's Exhibit No. 2 to examine. Without objection from defense counsel, V.A. described the exhibit as "all the dates and times that, or the dates and things that I helped you guys put together."

{¶ 47} In its brief before this court, the state acknowledges that it prepared the timelines reflected in State's Exhibit Nos. 1 and 2, but insists that they are not hearsay because they "ceased to be hearsay when B.A. and V.A. expressly adopted the statements in those two exhibits as their own statements when they each testified at trial." Alternatively, if the exhibits are deemed inadmissible, the state argues that these exhibits

18.

"were, at worst, duplicative of the verbal testimony provided by B.A. and V.A. at trial," and thus their admission by the trial court was harmless.

{¶ 48} The Rules of Evidence prohibit the use of hearsay, which is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). A "statement" includes a written assertion. Evid.R. 801(A). "Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio." Evid.R. 802.

{¶ 49} Having examined State's Exhibit Nos. 1 and 2, we agree with appellant that the written statements contained therein fit the definition of hearsay under Evid.R. 801(C). Each of the exhibits separately identifies the date range and location of each of the incidents of alleged sexual abuse, and sets forth the victim's age at the time of the incident as well as "what happened." As to the first incident involving B.A., State's Exhibit No. 1 states, from the perspective of B.A., that appellant "had sex with [B.A.]. Penial penetration. Mom got a job and was working. I was upstairs watching TV and [V.A.] was in the bath. I couldn't fight him off me, he was on top me, he heard toilet flush downstairs and he got off me. [Appellant] told me not to tell anyone." Similar language is found as to each incident of sexual abuse alleged in the indictment.

{¶ 50} The state acknowledges that the written assertions reflected in its timelines were prepared by the state, not the victims. Further, the state used the exhibits at trial to prove the truth of the matters asserted in the timelines, namely that appellant committed the acts set forth in the exhibits at the times and places identified in the exhibits.

{¶ 51} In short, these exhibits constitute hearsay, and double hearsay at that. In a similar case involving a timeline prepared by the state in conjunction with its witness, the Third District described the two layers of hearsay, as follows:

> The comments were written on Exhibit 6, out of court and by the prosecutor; thus constituting the first layer of hearsay. The prosecutor admitted that her commentary was based on information gleaned from out of court statements made by the victim, bringing us to the second level of hearsay.

*State v. Geboy*, 3d Dist. Union No. 14-02-09, 2003-Ohio-343, ¶ 53.

{¶ 52} Similarly, State's Exhibit Nos. 1 and 2 were prepared by the state using out-of-court statements of B.A. and V.A. Thus, these exhibits constitute inadmissible double hearsay. Accordingly, we find that defense counsel's failure to object to the admission of those exhibits was deficient.

{¶ 53} Next, we turn to the second prong of the *Strickland* test, the prejudice prong. In order to establish prejudice under his first assignment of error, appellant must demonstrate a reasonable probability that the jury would have reached a different verdict

20.

had defense counsel objected to State's Exhibit Nos. 1 and 2, such that confidence in the jury's verdict was undermined by counsel's defective performance.

{¶ 54} Appellant does not establish a reasonable probability of a different outcome in this case. As noted by the state, B.A. and V.A. testified as to all of the matters described in State's Exhibit Nos. 1 and 2. The inadmissible hearsay evidence reflected in the exhibits was merely duplicative of the testimony provided at trial by the victims. Consequently, its admission was harmless. *See Id.* at ¶ 57 (finding that erroneous admission of timeline exhibit containing double hearsay was harmless because the timeline was "cumulative to [the victim's] trial testimony and statements to police."); *see also State v. Tomlinson*, 33 Ohio App.3d 278, 515 N.E.2d 963, paragraph three of the syllabus (12th Dist.1986) ("Admission of hearsay may be harmless error where the declarant is also a witness, and she does not deny making the statements attributed to her.").

{¶ 55} Because any error attributable to the admission of State's Exhibit Nos. 1 and 2 was harmless, we find that defense counsel's failure to object to the admission of the exhibits did not undermine confidence in the verdict and there is not a reasonable probability that, but for defense counsel's deficient performance, the result of the proceedings would have been different. *State v. Krueger*, 176 Ohio App.3d 95, 2008-Ohio-1566, 890 N.E.2d 332, ¶ 36 (finding no prejudice despite counsel's deficient performance leading to trial court's erroneous instruction concerning burden of proof,

21.

where the instruction was deemed harmless).  Given appellant's inability to establish that he was prejudiced by defense counsel's failure to object to State's Exhibit Nos. 1 and 2, we find his first assignment of error not well-taken.

### ii.    Other Acts Evidence

{¶ 56} In his second assignment of error, appellant argues that defense counsel was ineffective for raising B.A.'s prior allegation that appellant forced another, Br.A., to perform oral sex on him without first investigating the matter to determine that the allegation would not be admissible at trial.

{¶ 57} During opening arguments, appellant's defense counsel made the following statement:

> Another thing you're going to hear out of [B.A.'s] mouth in 2019.  She said that [Br.A.], who is a cousin related to Jim – and excuse my language, it's going to be nasty.  "Jim, Jim forced [Br.A.] to give him a blow job."
> You're going to hear [Br.A.] come up here and say she's a liar.  You're going to hear it.

{¶ 58} At the conclusion of B.A.'s testimony, during recross examination, defense counsel asked B.A. if she told detectives that Br.A. performed oral sex on appellant.  The state immediately objected, noting that the question was outside the scope of its redirect examination.  The trial court agreed, and sustained the objection.

22.

{¶ 59} At the beginning of the second day of trial, the state moved to exclude any testimony from Br.A. regarding the alleged sexual encounter between he and appellant, arguing that such testimony would constitute extrinsic evidence of specific instances of conduct in violation of Evid.R. 608. Further, the state explained that B.A.'s statement to detectives was hearsay because she merely told law enforcement officers that she "had heard that this sexual encounter had occurred between the defendant and another person. She did not say that she witnessed it and that it actually happened." In addition, the state threatened to "call a rebuttal witness regarding certain statements [appellant] made while he was being committed to his wife about that incident having actually happened." The court then held the matter in abeyance for a ruling if the issue arose during the trial. It never did. Defense counsel offered no further argument, and the matter was not revisited given counsel's decision not to call Br.A. to testify during appellant's case-in-chief.

{¶ 60} Appellant argues that his defense counsel failed to thoroughly investigate the facts surrounding B.A.'s statement about appellant forcing Br.A. to perform oral sex on him. Had defense counsel conducted an investigation, appellant contends that counsel would have discovered that B.A. did not make the statement directly, but merely passed it on as gossip, which would have been inadmissible hearsay at trial and of little benefit to appellant in establishing B.A.'s lack of credibility.

{¶ 61} Upon review, we find that appellant cannot demonstrate that defense counsel was deficient for raising the issue of allegations of appellant's prior sexual acts

23.

with Br.A. Defense counsel's remarks during opening statements were made in the context of counsel's effort to establish that B.A. was not to be trusted when she made allegations of sexual abuse against appellant. To that end, counsel called the jury's attention to the fact that B.A. previously accused appellant of sexual abuse against a victim who denied any such abuse. But, according to the state, B.A. did not *directly* accuse appellant of such abuse. Instead, she heard someone else make the accusation and passed the information along. Even so, in this case there is little difference between B.A. fabricating a false accusation, as defense counsel initially suggested, and B.A. peddling someone else's false accusation. Whether she directly lied or merely gossiped, calling attention to her remarks concerning appellant's prior involvement with Br.A. was in furtherance of defense counsel's strategy of discrediting B.A. Moreover, the subsequent decision not to call Br.A. was a strategic decision that defense counsel made in light of the state's assurance that any testimony from Br.A. would be met with testimony from appellant's ex-wife that appellant admitted to the prior sexual abuse. It is well-established that debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

{¶ 62} In sum, we find that appellant has not demonstrated that counsel's performance was deficient. Moreover, we find that defense counsel's passing references to appellant's involvement with Br.A. did not alter the outcome of the proceeding. Consequently, appellant's second assignment of error is not well-taken.

24.

### iii.     Evidence of Prior Physical Abuse

{¶ 63} In his third assignment of error, appellant argues that his defense counsel was ineffective for failing to object to testimony from V.A. concerning text messages from appellant to B.A. encouraging B.A. to harm herself.  Additionally, appellant argues defense counsel was ineffective for failing to object to evidence concerning his prior physical abuse of B.A., V.A., and the family dog.

{¶ 64} During direct examination of V.A., the state asked V.A. several questions about the physical and mental effects appellant's sexual assaults had on her and B.A.  In responding to these questions, V.A. recalled seeing a text message exchange between appellant and B.A., in which appellant "was encouraging [B.A.] to cut herself and do certain drugs.  Like he made a joke about doing shrooms (sic).  And he was like, 'Hey, you should try it.'"  Defense counsel objected to this testimony, but only on the basis that it was inadmissible hearsay.  Because it was a statement by a party, appellant, the trial court overruled the objection.  There was no further argument from defense counsel that the evidence was inadmissible as character evidence or improper prior acts evidence.

{¶ 65} Additionally, the state elicited testimony from V.A. related to appellant's abusive treatment of the family dog and spanking of both B.A. and V.A.  The testimony was offered in the context of the state's questioning of V.A. as to whether she feared appellant and why she had such fears.

25.

**{¶ 66}** Appellant characterizes the import of the foregoing evidence as serving "no purpose but to portray Mr. Alliman as a man of bad character." Consequently, appellant argues that defense counsel was ineffective for failing to object to this evidence as inadmissible under Evid.R. 404(B), which prohibits the use of "other acts" evidence "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

**{¶ 67}** Notably, appellant was charged with several counts of rape, including rape by force or threat of force. "'Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). The Ohio Supreme Court has held that "'[f]orce need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." *State v. Eskridge*, 38 Ohio St.3d 56, 58-59, 526 N.E.2d 304 (1988). When the defendant is in a position of authority over the victim, as is the case here where appellant is the father of the victims, the element of force or threat of force may be established by proving that the child victim is in fear of the defendant. *State v. Benchea*, 11th Dist. Trumbull No. 2015-T-0054, 2016-Ohio-1369, ¶ 47.

**{¶ 68}** Appellant acknowledges that the testimony elicited from V.A. by the state was used "to demonstrate V.A.'s claimed fear." This testimony was not admitted for the purpose of proving appellant's physically abusive character in order to show that on he

26.

acted in accordance with that character on a particular occasions. It was admitted for the purpose of explaining why V.A. and B.A. were fearful of appellant and thus incapable of resisting his sexual advances. The evidence was also useful in explaining why the victims waited so long to disclose appellant's sexual abuse. Therefore, the evidence was not inadmissible under Evid.R. 404(B).

{¶ 69} Alternatively, appellant contends that the evidence was highly prejudicial and thus inadmissible under Evid.R. 403(A), which requires exclusion of evidence when its "probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 70} The evidence complained of by appellant was highly probative to demonstrate the victims' fear of appellant and the fact that this fear overcame the victims' ability to resist appellant and prevented them from disclosing the abuse for many years. Given the state's need to establish that appellant committed forcible rape and rebut appellant's argument concerning the length of time the victims waited to disclose the sexual abuse, we find that the probative value of V.A.'s testimony was not substantially outweighed by the danger of unfair prejudice. Thus, it was not inadmissible under Evid.R. 403(A).

{¶ 71} Having concluded that the evidence cited by appellant was not inadmissible under either Evid.R. 404(B) or Evid.R. 403(A), we find that defense counsel was not

27.

deficient for failing to object to the admission of the evidence under those rules.

Accordingly, appellant's third assignment of error is not well-taken.

### iv. Cross Examination of State's Witnesses

{¶ 72} In his fourth assignment of error, appellant argues that defense counsel was ineffective for failing to thoroughly cross examine the state's witnesses. In particular, appellant contends that defense counsel should have cross examined V.A. and her psychiatrist, Dr. Vishwas Mashalkar, about inconsistencies concerning V.A.'s lithium medication and when she was first prescribed it. Further, appellant contends that defense counsel should have examined inconsistencies surrounding precisely when V.A. and B.A. first revealed that they were victims of sexual abuse. Finally, appellant takes issue with the fact that defense counsel called no witnesses at trial even though appellant "had significant support people attending the trial." Appellant argues that he was "painted as a monster" by the state and wonders "[w]hy not call someone to testify to good character?" He also insists that counsel should have called an expert to refute the state's expert testimony supporting the testimony of B.A. and V.A.

{¶ 73} In his brief to this court, appellant does little more to establish ineffectiveness than to level a complaint that defense counsel could have done more at trial. He does not articulate how counsel's handling of cross-examination affected the outcome of the proceedings or explain how further discussion on the precise timing of V.A.'s lithium prescription or the victims' disclosure of appellant's sexual abuse could

28.

have impacted the jury's determination of whether appellant committed the acts of rape with which he was charged.

{¶ 74} As to his argument that defense counsel should have called character witnesses and an expert to refute the state's expert testimony, appellant does not articulate how such additional witnesses would have assisted him in this case or impacted the outcome of the proceeding. Further, "'the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel.'" *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 66, quoting *State v. Nicholas*, 66 Ohio St.3d 431, 436, 613 N.E.2d 225 (1993). The decision whether to retain an expert is a matter of trial strategy. *State v. Knight*, 6th Dist. Erie No. E-21-017, 2022-Ohio-1787, ¶ 28.

{¶ 75} In sum, we find that appellant has not demonstrated deficient performance or prejudice to support his claim of ineffective assistance of counsel under his fourth assignment of error. Accordingly, we find appellant's fourth assignment of error not well-taken.

### v.     Preservation of the Record

{¶ 76} In his fifth assignment of error, appellant argues that defense count was ineffective for failing to preserve errors for the record.

{¶ 77} Appellant argues that, in the event we find his pretrial motion to prohibit Koskela's expert testimony insufficient to preserve the issue for appellate review, his

29.

defense counsel was ineffective for failing to preserve his argument concerning the admissibility of Koskela's expert testimony under Crim.R. 16(K) by renewing his objection to that evidence at trial. Having already concluded that Koskela's expert testimony was admissible under Crim.R. 16(K), we find no merit to appellant's contention that defense counsel was deficient for failing to renew his objection to the testimony at trial.

{¶ 78} Accordingly, appellant's fifth assignment of error is not well-taken.

### C. Prosecutorial Misconduct

{¶ 79} In appellant's eighth assignment of error, he argues that the state committed prosecutorial misconduct.

{¶ 80} "The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected any substantial right of the accused." *State v. Jones*, 90 Ohio St.3d 403, 420, 739 N.E.2d 300 (2000). "However, the touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 61, citing *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). "In reviewing allegations of prosecutorial misconduct, we review the alleged wrongful conduct in the context of the entire trial, and if it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has

30.

not been prejudiced and his conviction will not be reversed." (Citation omitted.) *State v. Underwood*, 2d Dist. Montgomery No. 24186, 2011-Ohio-5418, ¶ 21.

{¶ 81} In appellant's eighth assignment of error, he raises six arguments relating to his contention that he was deprived of a fair trial due to prosecutorial misconduct. First, appellant argues that the state failed to provide Koskela's and Ottney's expert report as required by Crim.R. 16(K). We have already rejected those arguments and need not address them again here.

{¶ 82} Second, appellant argues that the prosecutor improperly vouched for B.A. and V.A. and elicited inadmissible Evid.R. 404(B) evidence during its questioning of its investigator and drug task force agent, Bill Marshall. In our review of the state's questioning of Marshall, we find no improper Evid.R. 404(B) testimony and no instances of vouching. Rather, Marshall testified concerning his review of the materials gathered by the state in this case and his interview of B.A. and V.A. Based upon his years of law enforcement experience, Marshall determined that mistakes were made by other law enforcement agencies in handling B.A. and V.A. in the past, including failure to follow up on earlier reports of physical abuse. In light of this limited testimony, appellant has failed to establish prosecutorial misconduct concerning the state's questioning of Marshall and his second argument is without merit.

{¶ 83} Third, appellant alleges prosecutorial misconduct based upon the state's use of inadmissible hearsay in State's Exhibit Nos. 1 and 2 at trial. We have already

31.

found that the admission of States' Exhibit Nos. 1 and 2 was harmless beyond a reasonable doubt in light of the testimony provided by B.A. and V.A. As such, appellant cannot establish that he was prejudicially affected by the state's use of these exhibits. Therefore, appellant's third prosecutorial misconduct argument fails.

{¶ 84} Fourth, appellant argues that the prosecutor committed misconduct by providing V.A. with a pendant belonging to his deceased wife. Prior to V.A. taking the stand, the prosecutor for the state alerted the trial court to the fact that he spoke to V.A., whom he described as a "particularly fragile witness," and "offered to loan her a comfort item if it would make her feel more comfortable. And I did. So I'm making that disclosure under *Brady* and its progeny as promise, consideration, and inducement. The item was my wife's pendant." The matter proceeded to the state's direct examination of V.A. without objection from defense counsel.

{¶ 85} Appellant makes no attempt to explain how the foregoing action on the part of the prosecutor was improper. The state notified defense counsel that it had provided the pendant to V.A. in advance of V.A.'s testimony, and counsel leveled no objection. Further, appellant fails to articulate how the provision of a pendant to V.A. prejudicially affected him or impacted the fairness of the trial. Therefore, we find no merit to appellant's fourth prosecutorial misconduct argument.

{¶ 86} Fifth, appellant argues that the state committed prosecutorial misconduct by threatening to bring felony charges against either appellant or appellant's defense

32.

counsel for making a false statement to the court concerning a note appellant gave to defense counsel regarding impeachment. We have reviewed the record and found no improper action on the part of the state with respect to appellant's note, which the state merely sought to have admitted into the record for the purpose of preserving the record on appeal. Appellant's fifth argument is without merit.

{¶ 87} Sixth, appellant contends that the prosecutor committed misconduct during closing arguments by improperly evoking sympathy for the victims, denigrating defense counsel, and telling the jury that they were "sending a message to the girls if you don't find [appellant] guilty," and "sending a message if you do find him guilty." There is no support in the record for appellant's argument concerning the denigration of counsel, but appellant's remaining argument merits closer attention.

{¶ 88} During the state's closing argument, the prosecutor stated the following to the jury: "If you come out of that jury room with not guilty verdicts, you know the message that [B.A.] and [V.A.] are going to receive is that after having gone through all that trauma, at the end of the day, you didn't believe them and they will remember that for the rest of their lives." Appellant's defense counsel immediately objected to the foregoing statement, and the trial court ordered the prosecutor to "redirect your argument."

{¶ 89} Thereafter, the prosecutor continued, stating: "At the same time if you return verdicts of guilty, the message that they are going to get is that at the end of the

33.

day, somebody believed them."  Again, defense counsel objected, and the trial court sustained the objection, as follows: "We are here, I would counter that we are here not to send messages, but to do justice, and this case needs to be decided on the facts and not on particular sympathies for either the witnesses or the Defendant.  It needs to be decided on the facts that you are given, the facts as you determine them to be."

{¶ 90} Notably, the same prosecutor who made the statements identified above made strikingly similar remarks during closing argument in another recently decided case involving delayed disclosure of sexual abuse of a minor.  In *State v. Carter*, 6th Dist. Ottawa No. OT-21-023, 2022-Ohio-3855, we examined an ineffective assistance argument precipitated by defense counsel's failure to object to the following comments from the prosecutor during closing:

> Now [A.B.] told you that first and foremost she was afraid to come forward because she didn't think anybody would believe her.  So when you go back to the jury room, I want you to consider something.  If you come back with not guilty verdicts on these charges, what message will [A.B.] get?  That you didn't believe her.  And she will remember that message for the rest of her life.
>
> But by the same token, if you come back with the right verdicts, the guilty verdicts, what message is she going to get?  That you believed her.  And she will remember that, too, for the rest of her life.  Now you have all

of the evidence and you have more than enough. You know what you need

to do.

*Id.* at ¶ 48.

{¶ 91} Upon reviewing the ineffective assistance argument raised in *Carter*, we found that "the prosecuting attorney's statements were objectionable." Nonetheless, we determined that the failure to object to those statements "did not lead to a reasonable probability that the result of the proceedings would have otherwise been different." *Id.* at ¶ 49.

{¶ 92} As in *Carter*, we find that the prosecutor's remarks were improper in this case. During closing argument, "the prosecution is entitled to some latitude and freedom of expression." *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 167, citing *State v. Keenan*, 66 Ohio St.3d 402, 409, 613 N.E.2d 203 (1993). "Although the prosecution is entitled to a degree of latitude in closing argument, it is improper for prosecutors to incite the jurors' emotions through insinuations and assertions that are not supported by the evidence and that are therefore 'calculated to mislead the jury.'" *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 87, quoting *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984).

{¶ 93} As in *Carter*, the prosecutor in this case "improperly and gratuitously 'substituted emotion for reasoned advocacy.'" *Carter* at ¶ 50, quoting *Keenan* at 407. The prosecutor's suggestion to the jury that the verdict would send a message to the

35.

victims invited the jury to render a verdict based upon sympathy for the victims rather than the evidence presented during the trial. This plea was "inflammatory and wrong, and contrary to the role of a prosecutor." *Id.* A prosecutor

> is in a peculiar and very definite sense the servant of the law, the twofold
> aim of which is that guilt shall not escape or innocence suffer. He may
> prosecute with earnestness and vigor—indeed, he should do so. But, while
> he may strike hard blows, he is not at liberty to strike foul ones. It is as
> much his duty to refrain from improper methods calculated to produce a
> wrongful conviction as it is to use every legitimate means to bring about a
> just one.

*Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

{¶ 94} Having found that the prosecutor's statements during closing arguments were improper, we must next consider whether that impropriety deprived appellant of a fair trial, thereby warranting reversal.

{¶ 95} "The fact that the prosecutor engaged in some improper argument * * * does not warrant reversal unless the remarks prejudicially affected substantial rights of the accused." *LaMar* at ¶ 168. "In making this determination, we must consider the effect of any misconduct in the context of the entire trial." *Id.* "We must also view the prosecutor's closing argument in its entirety when determining prejudice." *Id.*, citing *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996).

36.

{¶ 96} In this case, we find that the prosecutor's statements did not taint the fairness of the trial. These statements and the sentiment that the statements conveyed were not pervasive throughout the trial. Moreover, the trial court admonished the prosecutor not to continue his line of argument and instructed the jury to render their verdict based upon the facts and not on sympathy for B.A. and V.A. In providing this curative instruction, the court minimized the effect that the prosecutor's statements might have otherwise had on the jury.

{¶ 97} The prosecutor's remarks, while improper, did not jeopardize a fair trial and thus do not warrant a reversal in this case. Thus, appellant's sixth and final argument regarding prosecutorial misconduct is without merit. Having concluded that each of appellant's prosecutorial misconduct arguments is meritless, we find appellant's eighth assignment of error not well-taken.

### D.    Consecutive Sentences

{¶ 98} In appellant's ninth assignment of error, he argues that the trial court erred in imposing consecutive sentences. According to appellant, "the record does not support consecutive sentences and is contrary to the principles of felony sentencing."

{¶ 99} Our review of felony sentences is governed by R.C. 2953.08(G)(2). Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, modify, or vacate and remand a sentence only if the record demonstrates, clearly and convincingly, either of the following:

37.

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant; or

(b) That the sentence is otherwise contrary to law.

**{¶ 100}** Here, appellant specifically challenges the trial court's imposition of consecutive sentences, arguing that the record does not support the findings required under R.C. 2929.14 to impose consecutive sentences. The imposition of consecutive sentences is governed by R.C . 2929.14(C)(4), which states:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

38.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 101} R.C. 2929.14(C)(4) requires that a sentencing court make three specific findings before imposing consecutive sentences. Specifically, the court must find that: (1) consecutive sentences are necessary to protect the public or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public; and (3) R.C. 2929.14(C)(4)(a), (b), or (c) is applicable. *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108, N.E.3d 1028, ¶ 252. The trial court must make the requisite findings both at the sentencing hearing and in the sentencing entry. *Id.* at ¶ 253.

{¶ 102} In this case, the trial court made all three findings while imposing consecutive sentences. At the sentencing hearing, the trial court found that consecutive sentences were necessary to protect the public from future crime or punish appellant and were not disproportionate to the seriousness of appellant's conduct and the danger he

39.

poses to the public. Further, the court found that two or more of appellant's offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of appellant's conduct. In its subsequent sentencing entry, the trial court noted its findings under R.C. 2929.14, as well as its consideration of the principles and purposes of sentencing and the seriousness and recidivism factors under R.C. 2929.11 and 2929.12, respectively.

{¶ 103} Appellant does not provide any argument beyond his conclusory statement that the record does not support the imposition of consecutive sentences. In reviewing the record, we do not find that it clearly and convincingly establishes that the trial court's findings were unsupported. Accordingly, appellant's ninth assignment of error is not well-taken.

## E. Cumulative Error

{¶ 104} In his tenth and final assignment of error, appellant argues that he was deprived of a fair trial as a result of the cumulative effect of errors committed by the trial court at trial.

{¶ 105} The cumulative error doctrine provides that "'a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial court error does not individually constitute cause for reversal.'" *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 321, quoting *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971

40.

N.E.2d 865, ¶ 223. To determine whether the cumulative error doctrine applies, "there must first be a finding that multiple errors were committed at trial," and then "there must be a finding that there is a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors." *State v. Moore*, 6th Dist. Wood No. WD-18-030, 2019-Ohio-3705, ¶ 87.

{¶ 106} We have found two errors that were committed at trial. In particular, we have found that the trial court erred in admitting State's Exhibit Nos. 1 and 2 into evidence because those exhibits contained inadmissible double hearsay. Further, we found that the prosecutor's statements during closing were improper. In isolation, we found that these errors did not impact the outcome of the trial. Similarly, we find that these errors do not combine to raise a reasonable probability that the outcome of appellant's trial would have been different. Consequently, we find appellant's tenth assignment of error not well-taken.

### III. Conclusion

{¶ 107} Having found each of appellant's assignments of error not well-taken, we affirm the judgment of the Ottawa County Court of Common Pleas. The costs of this appeal are to be paid by appellant pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Thomas J. Osowik, J.
CONCUR.

_____
JUDGE

_____
JUDGE

Christine E. Mayle, J.
DISSENTS AND WRITES
SEPARATELY.

**MAYLE, J.**

{¶ 108} I agree with the majority that the trial court erred in admitting State's

Exhibits 1 and 2—the summaries of the victims' testimony—and I agree that the assistant

prosecutor engaged in misconduct when he cautioned the jury that it would be "sending a

message to the girls if you don't find [Alliman] guilty." I dissent from the majority

decision, however, because I would find that (1) Ottney's testimony was "expert"

testimony, therefore, it was incumbent on the state to make disclosures under Crim.R.

16(K); and (2) cumulative error in this case requires reversal and remand for a new trial.

**I.** **First Assignment of Error: Failure to Object to the Admission of the "Timelines"**

{¶ 109} The majority finds that the trial court erred in allowing the state to admit

evidence—prepared by the prosecutor's office—summarizing the victims' specific

allegations of abuse. I agree with this conclusion. But given the enormity of the error—

and the state's apparent misunderstanding of the hearsay rules—I feel compelled to

elaborate on the majority's explanation of the error.

42.

{¶ 110} The state prepared summaries, presented in the form of tables, with the following columns: (1) the criminal count; (2) the date the conduct allegedly occurred; (3) the victim's age at that time; (4) the location where the abuse allegedly occurred; (5) a description of the sexual abuse that occurred relating to the particular date and count; (6) life events the victims remembered that happened close in time to the sexual abuse and provided reason for them to recall the specific dates on which the abuse occurred.

{¶ 111} At trial, B.A. and V.A. testified about the specific instances of sexual abuse. As to B.A., the state waited until B.A. got stuck in identifying the year she was first abused, then presented her with the summary of her allegations (Exhibit 1). The state offered the summary into evidence and the trial court admitted it.

{¶ 112} With respect to V.A., the state presented her with its summary (Exhibit 2) *after* she completed direct examination—it was not used at all for the purpose of aiding her memory. As with Exhibit 1, the state offered the summary into evidence and the trial court admitted it.

{¶ 113} The state denies that these exhibits constituted hearsay. It claims— without citation to case law—that the exhibits "ceased to be hearsay when B.A. and V.A. expressly adopted the statements in those two exhibits as their own statements when they testified at trial." It insists that those statements became part of the witnesses' testimony. This is contrary to the Rules of Evidence.

43.

{¶ 114} Evid.R. 801(C) defines "hearsay as "a statement, *other than one made by the declarant while testifying at the trial* or hearing, offered in evidence to prove the truth of the matter asserted in the statement." (Emphasis added.) Evid.R. 801(D)(1) defines certain prior statements of a testifying witness who is subject to cross-examination as "not hearsay" only if:

The statement is

(a) *inconsistent with declarant's testimony*, and was *given under oath subject to examination* by the party against whom the statement is offered and subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or

(b) consistent with declarant's testimony and is *offered to rebut an express or implied charge against declarant of recent fabrication* or improper influence or motive, or

(c) *one of identification of a person soon after perceiving the person*, if the circumstances demonstrate the reliability of the prior identification. (Emphasis added.)

{¶ 115} "Where the proponent of the witness is seeking to establish a proposition, the substance of which statement coincides with the matter sought to be proved, the out-of-court statement is hearsay." *State v. Grubb*, 4th Dist. Lawrence No. 1735, 1985 WL 17460, *3 (Dec. 12, 1985), citing 1 Weisenberger, Ohio Evidence (1985), Section 801.5.

44.

In other words, a statement is *not* "not hearsay" merely because the witness is being asked about her own out-of-court statement. *State v. Schooler*, 2d Dist. Montgomery No. 28596, 2020-Ohio-4327, ¶ 12. *See also* Smedley, *Hearsay in the Modern Age: Balancing Practicality & Reliability by Amending Fed. Rule of Evidence 801(d)(1)(a)*, 87 Geo. Wash. L. Rev. 207, 213 (2019) (examining the Federal Rules of Evidence and recognizing that "a declarant-witness's own statements are still hearsay under the FRE"); Rispoli, *The Hearsay Paradox: Declarant-Witnesse' Own Out-of-Court Statements*, 70 Baylor L. Rev. 843, 847 (2018) (examining Texas law and recognizing that "a witness's own out-of-court statements, if offered for the truth, should be considered hearsay, and should be excluded unless an appropriate exclusion or exception applies").

{¶ 116} Here, B.A. and V.A. were not being confronted with prior inconsistent statements, the statements were not offered to rebut an express or implied charge against the declarant of recent fabrication, and the statements did not involve identification of a person soon after perceiving the person. Evid.R. 801(D)(1)(a)-(c) do not apply to exclude the statements from the hearsay definition.

{¶ 117} Moreover, as the majority explains, the summaries were *double* hearsay. *Attorneys for the state* drafted the summaries based on their interviews with the witnesses, therefore, the summaries reflected *their* version of the facts. This means that

45.

the jury retired to deliberate with a written copy of the state's script[2] in hand. This should not have happened.

{¶ 118} Also concerning, the summaries contained information that was at odds with B.A.'s testimony. Exhibit 1 indicates that with respect to the first count of rape, B.A. was watching TV when her father assaulted her; she testified at trial that she was playing Nintendo. With respect to the second count of rape, Exhibit 1 indicates that B.A. ran into the barn and hid; but B.A. testified that she ran into a cornfield, and even described that she lay on her belly, her father followed her but gave up, and she dusted the dirt off herself when she got up. These discrepancies were never explained. While this arguably worked against the state because it called into question the accuracy of B.A.'s testimony, it highlights my concern that what the jury received was actually the state's attorneys' version of the facts.

{¶ 119} This raises yet another point. Given that the state's attorney's statements were the first layer of hearsay here, the state's attorneys were arguably witnesses subject to examination. This is especially so given the discrepancies between B.A.'s testimony and what was contained in Exhibit 1. It raises numerous questions: When was the document created? Did B.A. initially say that she hid in the barn? Did she ever say that she hid in a cornfield? Who else was present when the information for the summary was

---

[2] I mean this quite literally. Page 270 of the transcript reveals that Exhibit 2 served as the state's outline of its direct examination of V.A. ("We're almost through page one.")

46.

created?  Did other details of B.A.'s story change?  Do the summaries contain any other inaccuracies?

{¶ 120} Finally, the state's proffering of these exhibits arguably amounted to a personal voucher for the victims' credibility.  In *State v. Moses,* 2018-Ohio-356, 104 N.E.3d 945, ¶ 20 (7th Dist.), the court explained that "'[i]t is improper for an attorney to express his or her personal belief or opinion as to the credibility of a witness or as to the guilt of the accused.'"  *Id.,* quoting *State v. Rector*, 7th Dist. No. 01 AP 758, 2002-Ohio-7442, ¶ 58 quoting *State v. Williams*, 79 Ohio St.3d 1, 679 N.E.2d 646 (1997).  In *Moses*, the prosecutor used the words "we," "us," and "our," when questioning a police officer, in a way that indicated that the prosecutor's office and the police shared the same viewpoints regarding the evidence, including the credibility of a witness.  The court observed that by doing so, the prosecution was essentially vouching for the witness.  It explained that "[i]n order for the prosecutor to 'vouch' for [a] witness, the prosecutor's statements must imply knowledge of facts outside the record or place the prosecutor's personal credibility in issue."  *Id.* at ¶ 21.  The court cited *United States v. Francis*, 170 F.3d 546, 551 (6th Cir. 1999), where the Sixth Circuit held that "[b]olstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known by the government but not known by a jury."

47.

{¶ 121} Here, it was made clear to the jury that the state and the victims collaborated in creating the summaries that what would become their testimony:

> State: And did you have input in the preparation of [the summary]?
>
> B.A.: I did.
>
> * * *
>
> State: Last but not least, [V.A.], I'm going to hand you what has been marked as State's Exhibit 2. Do you recognize what that document is?
>
> V.A.: Yes.
>
> State: Okay. In your own words, can you describe for the jury what the document is?
>
> V.A.: This is all the dates and times that, or the dates and things that I helped you guys put together.
>
> State: So you helped create that document, right?
>
> V.A.: Yes.
>
> State: But we typed it up for you.

{¶ 122} As the author of Exhibits 1 and 2—which were handed to the witnesses during their testimony, so they were obviously created *before* the witnesses testified—the prosecutor's statements implied knowledge of facts outside the record and placed the prosecutor's personal credibility in issue. Surely, the jury was left to believe that by

48.

offering these pre-drafted "summaries," the state's attorneys' were vouching for the truth of them. It was highly improper to admit the summaries into evidence.

{¶ 123} Finally, I do recognize that under Evid.R. 612, a writing may be used to refresh the memory of a testifying witness, and under Evid.R. 803(5), a memorandum or record used to refresh recollection will not be excluded by the hearsay rule. However, Evid.R. 803(5) makes clear that the memorandum or record "*may not itself be received as an exhibit unless offered by an adverse party*." (Emphasis added.) *Id.*

{¶ 124} To refresh the recollection of a witness under Evid.R. 612: "(1) the memory of the witness must be exhausted or nearly exhausted; (2) the writing must refresh the recollection of the witness; and (3) the opposing party must be provided an opportunity to inspect the writing and further cross-examine the witness with regard to that writing." *In re Sherry S.,* 6th Dist. Erie No. E-08-019, 2008-Ohio-6401, ¶ 42. *"*[T]he extent to which a party may refresh the recollection of his own witness is ordinarily a matter for the trial court's discretion." (Internal quotations and citations omitted.) *Id.*

{¶ 125} "In order to admit a statement into evidence under Evid.R. 803(5), a party must establish that (1) the witness has a lack of present recollection of the recorded matter, (2) the recorded recollection was made at a time when the matter was fresh in the witness's memory, (3) the recorded recollection was made or adopted by the witness, and (4) the recorded recollection correctly reflects the prior knowledge of the witness."

49.

(Citations omitted.) *State v. Proffitt*, 12th Dist. Butler No. CA2016-07-134, 2017-Ohio-1236, ¶ 22. "If Evid.R. 803(5) is satisfied, the statement itself may be read into evidence." *Id.* But *"a trial court errs in admitting the statement as an exhibit if it was not offered by the adverse party." Id.* at f.n. 2.

{¶ 126} With respect to V.A., the summary prepared by the state was not used to refresh her recollection—it was handed to her after her direct examination was complete. Moreover, no statements were read from the summary. Neither Evid.R. 612 nor Evid.R. 803(5) provided a basis for *using* the summary, let alone admitting the summary into evidence. *See, e.g., State v. Bibbs*, 2016-Ohio-8396, 78 N.E.3d 343, ¶ 9-10 (3d Dist.) (explaining that Evid.R. 612 does not apply where there is no indication in the record that the witness's memory needed refreshed, nor is Evid.R. 803(5) implicated under such circumstances).

{¶ 127} As to B.A., I question whether B.A.'s memory was "exhausted or nearly exhausted" at the time the state offered her the summary to refresh her recollection. The following dialogue occurred concerning B.A.'s reference to the summary:

> State: * * * What time, what year is this [that the first instance of abuse happened]?

> B.A.: What year? Hold on, my mind is at a complete blank right now. 2000, I can't even remember the time, top of my head. It had to be between when I was 10, so it was 2009 or 10 or 11.

50.

State:  [B.A.], in preparation for trial, did you create a timeline?

B.A.:  I did.

State:  And if you reviewed that timeline, would that help refresh your recollection?

B.A.:  It would.

{¶ 128} Defense counsel objected on the basis that the questioning was leading and implored "[s]he can't answer the question and they have to give her a timeline created in their own office?  This is beyond leading."  The trial court allowed the state to continue, expressing its view that the state was using the document to refresh B.A.'s recollection.

State:  Take a moment, look that over, and let me know if your memory has been refreshed?

B.A.:  It is.  It was 2010.

{¶ 129} The state later circled back to Exhibit 1:

State:  Today you've discussed a lot of things.  And I want to show you one last time State's Exhibit 1.  You use this to refresh your recollection.

And looking over that document, do you recognize that document?

B.A.:  I do.

State:  And did you have input in the preparation of that document?

51.

B.A.: I did.

State: And the words that are on there, is that how you described the incidents that occurred?

B.A.: Yes.

State: Do you adopt the document as if you yourself wrote that?

B.A.: Yes.

State: That's your statement?

B.A.: Yes.

{¶ 130} The only fact that B.A. could not remember was the year the first instance of abuse occurred. She seemed to know how old she was when it occurred. If given a moment to calculate the year of the incident in relation to her date of birth—i.e., exhaust her memory, as this court has said is required before utilizing Evid.R. 612—it seems that her recollection would not have needed to be refreshed.

{¶ 131} But even setting aside whether the summary was properly used to refresh B.A.'s recollection under Evid.R. 612, the document itself contained inadmissible hearsay and was not properly admitted under Evid.R. 803(5). *See Bibbs* at ¶ 10; *Proffitt*, 12th Dist. Butler No. CA2016-07-134, 2017-Ohio-1236, at f.n. 2 ("[A] trial court errs in admitting the statement as an exhibit if it was not offered by the adverse party.").

52.

**{¶ 132}** In sum, I agree with the majority that Exhibits 1 and 2 were improperly admitted into evidence. I would find that counsel was defective in failing to object to the admission of these exhibits. I will address prejudice and the impact of the error below.

## II.     Seventh Assignment of Error:  Admission of Ottney Testimony

**{¶ 133}** The majority concludes that Ottney's testimony was "lay." Because it characterizes her testimony as lay, it does not address Alliman's claim that Ottney's testimony should have been excluded because the state failed to comply with Crim.R. 16(K). I disagree that certain of Ottney's testimony was lay. As such, I agree with Alliman that the state violated Crim.R. 16(K) by failing to provide a written report from Ottney summarizing her testimony, findings, analysis, conclusions, opinions, and qualifications. I also feel compelled to address a couple of additional points.

**{¶ 134}** First, the state's brief misrepresents the record. It claims that "the Appellant never objected to Diana Ottney testifying at the trial of this case," and, therefore, waived appellate review of this issue. In fact, Alliman filed a pretrial motion seeking to exclude Ottney's testimony, registered four objections to her testimony, and moved to strike all evidence presented through Ottney. The state's contention that Alliman did not object is impossible to reconcile with the record.

**{¶ 135}** Second, Alliman's brief also contains an inaccuracy. Alliman maintains that Ottney was not disclosed as a witness until four days before trial. It is true that Ottney was not disclosed as a witness until April 30, 2021, and trial was scheduled for

53.

May 4, 2021.  But the case was continued, and was not, in fact, tried until June 28, 2021.  As previously noted, Alliman did file a motion to preclude Ottney from testifying as an expert witness under Crim.R. 16(K)—he did so on May 3, 2021.  The reason for continuing the trial date is not explained in the record; perhaps it was *because of* the late disclosure.  In any event, as it played out, Alliman knew Ottney would be testifying almost two months before the case was actually tried.

{¶ 136} Third, I would find that Ottney's testimony concerning common symptoms or behaviors of sexual abuse victims was expert testimony.[3]

{¶ 137} The state asked Ottney how she is able to identify that someone is the victim of sexual abuse and asked her to describe common symptoms and behaviors.  Ottney is a licensed social worker who has treated more than 200 victims of sexual abuse.  In presenting Ottney's testimony, the state highlighted this experience, along with her specialized training, including her education, certifications, career path, licensure, and continuing education obligations.  Clearly, Ottney is able to identify symptoms and

---

[3] With respect to Ottney's testimony describing her observations of the victims, I agree with the majority that that was lay testimony.  In *State v. Kamer*, 6th Dist. Wood No. WD-20-084, 2022-Ohio-2070, ¶ 113, we recognized that "a nurse who conducts an examination and testifies only to the facts that she personally observed during that examination would be a lay witness like any other lay witness, and expert qualification would not come into play."  Here, Ottney's testimony concerning her observations of B.A. or V.A.—she was "anxious" or "guarded" or "angry," she disclosed past trauma, she has self-harmed, she is not ready to disclose specific details, she is stressed about trial—would be "lay" testimony.

54.

behaviors of sexual abuse only *because* of her specialized education, training, and experience. While a lay person can certainly testify regarding her own observations of human behavior, a lay person does not have the specialized training or expertise to classify observed human behavior as a sign or symptom of sexual abuse. Much of what Ottney described—such as delayed disclosure—was explained to the jury precisely because it is not common knowledge and may even seem counterintuitive to a lay person. *See State v. McGlown*, 6th Dist. Lucas No. L-07-1163, 2009-Ohio-2160, ¶ 41 (recognizing that "[a] number of other Ohio District Courts of Appeals have also concluded that the manner in which child victims of sexual abuse disclose and report that abuse is beyond the knowledge and experience of lay persons"); *State v. Solether*, 6th Dist. Wood No. WD-07-053, 2008-Ohio-4738, ¶ 65 (concluding that while based largely upon his personal experience, officer's testimony about delayed reporting by sexual assault victims "is not within the knowledge of the average juror," "required 'specialized knowledge,'" and "is properly categorized as expert testimony"). *But see State v. Sellers,* 11th Dist. Ashtabula No. 2021-A-0016, 2022-Ohio-581, ¶ 31, quoting *State v. Mathis*, 8th Dist. Cuyahoga No. 107365, 2019-Ohio-3654, ¶ 61-63 ("[T]estimony by a social worker 'about the manner in which sexually abused children disclose the nature of their abuse based on her experience with such cases,' is admissible lay opinion testimony.").

{¶ 138} In fact, the questions as phrased by the state's attorney belie any contention that Ottney's testimony was not expert testimony. For instance, the state

asked Ottney to provide "a layman explanation" of what she does, emphasized her experience as "a trained professional," and asked numerous questions calling upon her to speak from her specialized experience. What's more, Ottney's testimony was similar in nature to that of Koskela, who *was* offered as an expert witness. It is difficult to understand how the state can argue that Koskela's testimony was proper expert testimony, while Ottney's was lay.

{¶ 139} Finally, given my belief that Ottney provided expert testimony, I believe the state *did* violate Crim.R. 16(K) by failing to provide a written report from Ottney summarizing her testimony, findings, analysis, conclusions, opinions, and qualifications. Because the trial court improperly characterized Ottney's testimony as lay, it never reached this issue.

{¶ 140} According to defense counsel's objections at trial, despite Alliman's motion to preclude Ottney from testifying as an expert (filed two months earlier), the state still never provided a report from Ottney under Crim.R. 16(K). The state responded to the trial objection by emphasizing that it timely provided all of Ottney's counseling records during discovery—it never purported to have provided the required report. It should have.

{¶ 141} "The purpose of Crim.R. 16(K) is to avoid unfair surprise by providing notice to the defense and allowing the defense an opportunity to challenge the expert's findings, analysis, or qualifications, possibly with the support of an adverse expert who

56.

could discredit the opinion after carefully reviewing the written report." (Internal quotations and citations omitted.) *State v. Boaston*, 160 Ohio St.3d 46, 2020-Ohio-1061, 153 N.E.3d 44, ¶ 48. "Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial." Crim.R. 16(K); *Boaston* at ¶ 55.

{¶ 142} A trial court errs where it admits expert testimony that has not been disclosed as required under Crim.R. 16(K). *Id.* at ¶ 59. Where the trial court has committed such error, the appellate court must determine whether that error was harmless under Crim.R. 52(A). *Id.* at ¶ 59. Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." "To prejudice a defendant's substantial rights, the error must have affected the outcome of the [trial] court proceedings." (Internal quotations and citations omitted.) *Id.* at ¶ 62. Where the error involves the erroneous admission of evidence, we must determine: (1) "whether the defendant was prejudiced by the error"—"i.e., whether the error had an impact on the verdict"; (2) "whether the error was not harmless beyond a reasonable doubt"; and (3) whether, excising the prejudicial evidence is excised, the remaining evidence establishes the defendant's guilt beyond a reasonable doubt. (Internal quotations and citations omitted.) *Id.* at ¶ 63.

{¶ 143} As with the admission into evidence of Exhibits 1 and 2, I will address the impact of this error below.

57.

### III.    Eighth Assignment of Error:  Prosecutorial Conduct

{¶ 144} I agree with the majority that the assistant prosecutor committed misconduct during closing arguments when he made the following statements, intended to evoke the jury's sympathy:

> If you come out of that jury room with not guilty verdicts, you know the message that [B.A.] and [V.A.] are going to receive is that after having gone through all that trauma, at the end of the day, you didn't believe them and they will remember that for the rest of their lives.  * * * At the same time if you return verdicts of guilty, the message that they are going to get is that at the end of the day, somebody believed them.

{¶ 145} Again, I will address the impact of this error below.

### IV.    Tenth Assignment of Error:  Cumulative Error

{¶ 146} Under the doctrine of cumulative error, a judgment may be reversed when the cumulative effect of errors deprives a defendant of his or her constitutional rights, even though such errors, individually, are not prejudicial.  *State v. Williams*, 149 Ohio App.3d 434, 2002-Ohio-4831, 777 N.E.2d 892, ¶ 36 (6th Dist.), citing *State v. DeMarco*, 31 Ohio St.3d 191, 196-197, 509 N.E.2d 1256 (1987).  "Although violations of the Rules of Evidence during trial, singularly, may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial."  *DeMarco* at 196–97.  To consider whether

58.

"cumulative" error is present, an appellate court must first find that multiple errors were committed. *State v. Madrigal*, 87 Ohio St.3d 378, 398, 721 N.E.2d 52 (2000). "To affirm a conviction in spite of multiple errors, we must determine that the cumulative effect of the errors is harmless beyond a reasonable doubt." *State v. Anderson,* 7th Dist. Mahoning No. 03MA252, 2006-Ohio-4618, ¶ 80, citing *DeMarco* at 195. "The errors may be considered harmless if there is overwhelming evidence of guilt, if Appellant's substantial rights were not affected, or if there are other indicia that the errors did not contribute to the conviction." *Id.*, citing Crim.R. 52(A); Evid.R. 103(A); *State v. Martin,* 103 Ohio St.3d 385, 2004–Ohio–5471, 816 N.E.2d 227, ¶ 51. "Although the cumulative error doctrine is necessarily case specific, the doctrine most often applies where the evidence is not overwhelming or when the outcome depends upon witness credibility." *State v. Baber,* 2021-Ohio-1506, 171 N.E.3d 1257, ¶ 38 (1st Dist.).

{¶ 147} This case revolved entirely around the credibility of the victims. There was no physical evidence, no report by a Sexual Assault Nurse Examiner, and no third-party witnesses to the alleged abuse. The jury was sent to deliberate with hearsay evidence, most notably, summaries *prepared by the state and created before the witnesses testified*—the state's script for the victims' direct examinations—outlining the facts that the state wanted the jury to find and improperly vouching for the accuracy of the information even though, in some instances, the testimony did not even match the script. The state failed in its obligation to provide a report summarizing its expert's

59.

testimony, findings, analysis, conclusions, opinions, and qualifications. And the assistant prosecutor improperly cautioned the jury during closing of the message it would be sending to the victims if it did not convict Alliman, appealing to the jurors' sympathy and emotions.

{¶ 148} Perhaps, alone, any one of these errors would arguably be harmless. Perhaps even the combination of errors would be harmless if there was other inculpatory evidence and the entire case did not hinge on the victims' credibility. But on the facts of this case, the cumulative effect of the errors combined such that I cannot conclude that Alliman's substantial rights were not affected. It is impossible to conclude—beyond a reasonable doubt—that the errors did not contribute to the conviction. And given that this was a case premised entirely on the victims' credibility, I have to cede that there is a reasonable probability that the outcome of the proceedings would have been different if the jury had not been sent to deliberate with what amounted to the state's proposed findings of fact.

{¶ 149} I would, therefore, find Alliman's tenth assignment of error well-taken. *See State v. Poling,* 11th Dist. Portage No. 2004-P-0044, 2006-Ohio-1008, ¶ 38 (finding that cumulative effect of prosecutor's misconduct warranted reversal and new trial); *State v. Zimmerman,* 2019-Ohio-721, 132 N.E.3d 1185, ¶ 34, 37 (10th Dist.) (finding cumulative error where trial court allowed improper testimony by police officers offered to bolster witness's credibility, jurors had been exposed to an excluded piece of evidence,

60.

and evidence in the case was not entirely supportive of the state's allegations); *State v. Echols,* 128 Ohio App.3d 677, 700, 716 N.E.2d 728 (1st Dist.1998) (finding cumulative error where, in case involving six eyewitnesses, trial court excluded expert testimony regarding eyewitness identification and allowed defendant to be tried on numerous charges in one trial, and evidence of guilt was not overwhelming). I would reverse Alliman's conviction and remand this matter to the trial court to be retried.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.